**Opinion filed April 30, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00310-CV

_____

## IN THE INTEREST OF E.M. AND A.M., CHILDREN

**On Appeal from the 91st District Court**

**Eastland County, Texas**

**Trial Court Cause No. 23-067-DCFAM-46798**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from the trial court's order terminating the parental rights of the mother and father to their children, E.M. and A.M.[1]  Only the mother, Appellant, appealed.  In seven issues, Appellant challenges the sufficiency of the evidence to support the trial court's findings that she committed the termination grounds listed in Section 161.001(b)(1)(D), (E), (L), (N), (O), and (P) of the Texas Family Code, and that termination of her parental rights is in the

_____

[1]We use initials to refer to the children and the children's family members.  *See* TEX. R. APP. P. 9.8(b).

children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (L), (N), (O), (P) (West Supp. 2024). We modify and affirm the trial court's order.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. FAM. § 161.001(b). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the children. *Id.* § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant committed six of the acts listed in Section 161.001(b)(1)—specifically, that Appellant:

(D) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children;

(E) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children;

(L) has been convicted or placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious bodily injury of a child under Section 22.04 of the Texas Penal Code (injury to a child, elderly individual, or disabled individual);

(N) constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Texas Department of Family and Protective Services (the Department) for not less than six months, and despite the Department's reasonable efforts to return the children to Appellant, she did not regularly visit or maintain significant contact with the children, and demonstrated an inability to provide the children with a safe environment;

2

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the children, who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal under Chapter 262 for abuse or neglect; and

(P) used a controlled substance, as defined by Chapter 481 of the Health and Safety Code, in a manner that endangered the health and safety of the children, and either failed to complete a court-ordered substance abuse treatment program or continued to abuse the controlled substance after completion of a program.

*See id.* § 161.001(b)(1)(D), (E), (L), (N), (O), (P). The trial court further found that termination of Appellant's parental rights was in the children's best interest. *See id.* § 161.001(b)(2).

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could

reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of the children, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re J.S.*, 687 S.W.3d 541, 547 (Tex. App.—Eastland 2024, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the children; (6) the plans for the children by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the children's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the children's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the children. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the children, not the parent. *J.S.*, 687 S.W.3d at 548; *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his or her past conduct in determining whether termination of the parent-child relationship is in the children's best interest. *J.S.*, 687 S.W.3d at 548; *In re Z.R.M.*, 665 S.W.3d 825, 829 (Tex. App.—San Antonio 2023, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the children may recur in the future if the children are returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Additionally, the factfinder may infer from a parent's past inability to meet the children's physical and emotional needs an inability or unwillingness by the parent to meet the children's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

*The Evidence Presented at Trial*

On the evening of September 17, 2023, when A.M. was eleven months old, he was admitted to Eastland Memorial Hospital with a head injury. Appellant reported that A.M. fell off the bed the night before, and she called 9-1-1 because he

began vomiting. After medical staff discovered subdural hematomas—i.e., that A.M.'s brain was bleeding—he was airlifted to Cook Children's Medical Center in Fort Worth. There, the Child Advocacy Resources and Evaluation (CARE) Team of physicians and nurses treating A.M.'s brain hemorrhages also observed bruises on his shins and retinal hemorrhaging "too numerous to count." A.M.'s brain bleed and retinal hemorrhages, which "result from violent acceleration/deceleration, rotational, shearing forces," were "highly suspicious for physical abuse." Appellant posited that A.M.'s ocular injuries were caused by her ex-husband, the father of the children, hitting A.M. in the face when he was three months old. However, the CARE Team determined that A.M. "being punched in the face during a domestic violence altercation [eight] months ago [did] not account for [his] injuries"; rather, it was their medical opinion that A.M. "had been shaken."

Because "finances [were] limited," Appellant remained in Eastland until September 19 with two-year-old E.M. and Brent Swart, her boyfriend at the time. She told hospital social workers that their car broke down in Eastland as they were moving from Colorado to Virginia, and they were waiting on repairs. She revealed that she was pregnant, expressed concern about having run out of money to get to Virginia, and disclosed her history of depression. Hours after they arrived at the hospital, Appellant asked nurses to take A.M. out of the room, and later left the room herself another time because she "need[ed] a break from these kids." Swart also brought A.M. to the nurses and asked: "Will you take him back? . . . . He cries and screams, screams and cries . . . . Oh he is a pain in the a-s . . . he and his sister are up all f-----g night with me."

While E.M. was in A.M.'s room, a nurse noticed that she was unable to lift her right arm, so the CARE Team evaluated her. E.M.'s x-rays confirmed that her

6

right elbow was dislocated,[2] and had gone untreated. Appellant told medical staff that she had not noticed E.M.'s limp right arm but posited that E.M. incurred the injury when she jumped off the bed a few days prior. Appellant also reported that Swart would often hold E.M.'s arm, "pull her up by the hand[,] and jerk her when they are walking." Swart claimed that E.M. was not injured and was "just acting." Based on the children's injuries and Appellant's inconsistent explanations, the CARE Team determined that E.M. and A.M. were physically abused and reported its findings to the Department and law enforcement. On September 20, Fort Worth police officers arrested Appellant and Swart[3] at the hospital, and the Department was granted temporary managing conservatorship of the children. Appellant was subsequently charged in Eastland with the third-degree felony offense of injury to a child, pleaded guilty, and was placed on deferred adjudication community supervision for ten years. *See* TEX. PENAL CODE ANN. § 22.04(a)(3), (f) (West Supp. 2024).

The parties convened for the final termination hearing on November 12, 2024. The Department presented the testimony of permanency case manager Amber DeLuna, who testified that the children have been in their "foster-to-adopt home" since removal. They "are very bonded with [their] foster family," and call their foster parents "Mama and Dada." When the children came into care, "[t]here were concerns they were developmentally delayed." Both children have participated in Early Childhood Intervention (ECI), occupational therapy, speech therapy, and physical therapy. At the final hearing, DeLuna confirmed that "[t]hey're doing extremely well." "They're still a little behind, but they're making progress." They

---

[2]Also referred to as "nursemaid's elbow."

[3]By the final termination hearing in November 2024, Brent Swart, had been excluded as the father of E.M. and A.M., and he and Appellant were no longer in a relationship.

have also recovered from their injuries after a series of follow-up medical appointments.

Although DeLuna testified that Appellant was "partially compliant" with her family plan of service, the Department did not introduce the service plan at trial, and did not ultimately argue that Appellant failed to complete her court-ordered services. DeLuna acknowledged that Appellant completed her required classes, counseling, evaluations, and consistently attended parent-child visits. But she tested positive for methamphetamine once in March or February 2024, was not taking her prescribed psychotropic medications, and has not "[m]aintain[ed] her own stable housing." Appellant had been living in an apartment with her new boyfriend, James Foster, since June 2024, but was not listed as a lessee or tenant in the lease agreement. When DeLuna spoke to Appellant at Foster's apartment a few days before trial, she admitted that she was not taking her medication as recommended for the "stabilization of her schizophrenic symptoms." Furthermore, DeLuna opined that it was in the children's best interest to terminate Appellant's parental rights, due in part to the diminished bond between the children and Appellant: "They get excited to see her, but they're twice as excited to go home and see their foster family."

Appellant testified that she has maintained legal employment and stable housing since June 2024 and refuted the allegation that she was not taking her medication. Appellant claimed that she believed she was on the apartment lease, and "intend[ed] to address [it] immediately." During cross-examination, Appellant agreed that she was on deferred adjudication for injury to a child but refused to discuss the children's injuries. She admitted to "know[ing] what happened with [A.M.]," but "plead[ed] the Fifth" when asked what caused his head trauma. Finally, the Department introduced a photograph of a handwritten document entitled "Agreement," which read: "[Appellant] agrees to take full responsibility for [the] 2004 Ford [sic] [L]incoln [N]avigator and agrees to give us the baby." Appellant,

8

who miscarried shortly after her release from jail in December 2023, denied promising to trade her unborn child for a vehicle. She instead described it as "[a] surrogacy situation," and the vehicle was for Appellant's trip to California for the adoption.

At the conclusion of the hearing, the Department sought termination of Appellant's parental rights only under subsections (D), (E), and (L)(ix). The trial court agreed, and orally rendered judgment terminating Appellant's parental rights pursuant to Section 161.001(b)(1)(D), (E), and (L)(ix), and under Section 161.001(b)(2) as being in the children's best interest. *See* FAM. § 161.0001(b)(1)(D), (E), (L)(ix), (b)(2). The trial court's final order terminates Appellant's parental rights under Section 161.001(b)(1)(D), (E), (L), (N), (O), and (P), and in the best interest of the children. This appeal followed.

*Sections 161.001(b)(1)(D) and (E) Endangerment*

In her first and second issues, Appellant challenges the trial court's findings that she endangered E.M. and A.M. as set forth in Sections 161.001(b)(1)(D) and (E) because there is no evidence "of who caused the injuries to the children" or "how the children sustained the alleged injuries."

Although only one statutory ground is necessary to support termination, appellate courts must address a parent's challenges to a trial court's findings under subsections (D) or (E), as they may have implications for the parent's rights to other children. *See* FAM. § 161.001(b)(1)(M); *In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law considerations with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either ground). Thus, if we conclude that the evidence is legally and factually sufficient to uphold the trial court's finding as to either subsection (D) or (E), we need not address the remaining subsections. *See* FAM. § 161.001(b)(1); TEX. R. APP. P. 47.1. And when the

9

evidence pertaining to both subsections (D) and (E) is interrelated, as it is here, we may conduct a consolidated review of the trial court's endangerment findings. *See In re A.L.S.*, 660 S.W.3d 257, 263–64 (Tex. App.—San Antonio 2022, pet. denied); *In re J.D.*, 436 S.W.3d 105, 114 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.).

The statutory endangerment grounds require clear and convincing proof that the parent has: "(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child," or "(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." FAM. § 161.001(b)(1)(D), (E); *In re S.M.R.*, 434 S.W.3d 576, 585 (Tex. 2014). "[E]ndangerment encompasses a larger array of conduct that 'expose[s a child] to loss or injury' or 'jeopardize[s]' the child." *In re R.R.A.*, 687 S.W.3d 269, 277 (Tex. 2024) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). The term means "more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment," but "does not require actual harm." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *see R.R.A.*, 687 S.W.3d at 277 (citing *Boyd*, 727 S.W.2d at 533).

To terminate a parent's rights for endangerment under subsections (D) or (E), the "parent's endangering conduct need not 'be directed at the child,'" nor must "the child actually suffer[] injury." *R.R.A.*, 687 S.W.3d at 277 (quoting *Boyd*, 727 S.W.2d at 533); *In re C.E.*, 687 S.W.3d 304, 310 (Tex. 2024). "[T]ermination under [subsection] (D) requires that the child's environment is a source of endangerment, and the parent's conduct may create that dangerous environment." *C.E.*, 687 S.W.3d at 310. "A parent's drug use, violence, or other abuse may make the child's environment endangering to the child." *In re J.S.*, 675 S.W.3d 120, 128 (Tex. App.—Dallas 2023, no pet.). "A parent acts 'knowingly' when the parent is aware

that the environment creates a potential danger to the child but the parent disregards that risk." *Id.* Because conditions or surroundings cannot endanger children unless the children are exposed thereto, the relevant time frame for evaluating subsection (D) is before the children's removal. *J.W.*, 645 S.W.3d at 749.

Endangerment under subsection (E), in contrast, focuses on the parent's conduct, and whether the endangerment of the children's well-being was the direct result of the parent's acts, omissions, or failures to act. *In re J.S.*, 687 S.W.3d 541, 550 (Tex. App.—Eastland 2024, no pet.). Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *J.S.*, 687 S.W.3d at 550; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). "A factfinder may infer endangerment from 'a course of conduct' that presents substantial risks to the child's physical or emotional well-being." *R.R.A.*, 687 S.W.3d at 277. A parent's actions prior to and after the children's removal may show an endangering course of conduct. *See J.S.*, 687 S.W.3d at 550 ("[E]ndangering conduct may include a parent's actions before the child's birth and may relate to the parent's actions while the parent had possession of other children."). "Even evidence of criminal conduct, convictions, and imprisonment prior to the birth of a child will support a finding that a parent engaged in a course of conduct that endangered the child's well-being." *In re A.J.M.*, 375 S.W.3d 599, 606 (Tex. App.—Fort Worth 2012, pet. denied); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (Illegal drug use and offenses that occurred before the child's birth may be considered as part of a course of conduct that endangers a child.).

The trial court's endangerment findings are supported by Appellant's own testimony, her guilty plea to intentionally or knowingly causing bodily injury to at least one of her children, and the 400 pages of medical records admitted without

objection. A child's unexplained injuries consistent with child abuse can support an endangerment finding under subsections (D) and (E), and "[p]roof that a parent specifically caused an injury is not necessary." *C.E.*, 687 S.W.3d at 310. "[R]eviewing courts must 'view each piece of circumstantial evidence, not in isolation, but in light of all the known circumstances.'" *Id.* at 309 (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)). For example, courts have relied on medical evidence showing the types of injuries suffered by the child, their stages of healing, and whether the injuries were inconsistent with the parents' explanations or lack thereof. *See id.* at 310–14; *In re C.D.L.*, No. 04-23-00105-CV, 2024 WL 3349099, at *3 (Tex. App.—San Antonio July 10, 2024, no pet.) (mem. op.); *In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("A history of repeated injuries to a child, even if unexplained, supports . . . a finding of endangerment."); *In re L.L.M.*, 522 S.W.3d 34, 45 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (affirming endangerment finding where appellant-mother was the child's sole caregiver leading up to the child's hospitalization for unexplained brain hemorrhages of varying ages and over twenty broken bones, which were consistent with child abuse); *In re J.D.*, 436 S.W.3d 105, 114 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("child's unexplained, non-accidental fractures of various ages support a reasonable inference that the caregivers knew of the injuries and their cause").

Here, the medical records established that the children were physically abused—specifically, that A.M. had been shaken. It was undisputed that Appellant and Swart were the children's caregivers when the injuries occurred, and their explanations for their injuries were inconsistent with the medical findings. Appellant did not contest the medical evidence demonstrating that her children were physically abused. In fact, Appellant told the CARE Team that E.M.'s dislocated elbow could have been caused by her falling off the bed, then revealed that Swart

12

routinely pulled and jerked E.M.'s arm, despite her "ask[ing] him multiple times not to do it." Appellant also admitted at trial that she knew the cause of A.M.'s head injury but invoked her right against self-incrimination when asked how it happened. The trial court was free to draw a negative inference from Appellant's refusal to disclose how A.M. was injured. *See In re S.M.O.*, No. 04-24-00253-CV, 2024 WL 4280991, at *4 (Tex. App.—San Antonio Sept. 25, 2024, pet. denied) (mem. op.); *In re O.S.*, No. 02-24-00295-CV, 2024 WL 4778360, at *3 n.9 (Tex. App.—Fort Worth Nov. 14, 2024, pet. denied) (mem. op.) ("In a civil case, including a termination of parental rights case, a fact finder may draw an adverse inference against a party who pleads the Fifth Amendment.") (quoting *In re E.S.*, No. 12-20-00282-CV, 2021 WL 2483788, at *5 (Tex. App.—Tyler June 17, 2021, pet. denied) (mem. op.)).

Due to the children's injuries and Appellant's implausible accounts, she was arrested, spent approximately three months in jail, and was placed on deferred adjudication for injury to a child. Based on the evidence presented, the trial court could reasonably infer that Appellant either intentionally caused A.M.'s and E.M.'s injuries, or at least "knowingly failed to ameliorate the underlying cause" of the children's abuse. *See In re J.P.B.*, 180 S.W.3d 570, 574 (Tex. 2005). Such evidence of criminal, parental misconduct supports the trial court's finding that Appellant endangered the children. *See In re E.J.M.*, 673 S.W.3d 310, 331 (Tex. App.—San Antonio 2023, no pet.) ("Evidence of criminal conduct, convictions, and imprisonment and their effect on the parent's life and ability to parent may establish an endangering course of conduct.").

The trial court was likewise permitted to consider Appellant's positive drug test, her history of mental illness, and DeLuna's testimony that Appellant was not taking her medication for schizophrenia. *See C.E.*, 687 S.W.3d at 314. It is undisputed that "a parent's decision to engage in illegal drug use during the

pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *J.S.*, 687 S.W.3d at 551 (quoting *In re A.M.*, 495 S.W.3d 573, 580 (Tex. App.—Houston [1st Dist.] 2016, pet. denied)). And although "mental health conditions, standing alone, are not sufficient to show endangerment, . . . a parent's mental instability may contribute to a[n] [endangerment] finding." *C.E.*, 687 S.W.3d at 314.

Based on the foregoing, we conclude that the evidence is sufficiently clear and convincing such that a reasonable factfinder could have formed a firm conviction or belief that Appellant engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the child. *See* FAM. § 161.001(b)(1)(E); *see also In re W.D.*, No. 10-18-00339-CV, 2019 WL 1291111, at *3 (Tex. App.—Waco Mar. 20, 2019, no pet.) (mem. op.) ("evidence of both parents' drug use, which resulted in the children testing positive for mari[h]uana" supported the trial court's endangerment finding). We likewise conclude that Appellant's voluntary, deliberate, and conscious acts constitute more than a single instance of conduct; the trial court could have rationally formed a firm conviction or belief that Appellant's actions created "conditions or surroundings which endanger[ed] the children's physical or emotional well-being of the child." *See* FAM. § 161.001(b)(1)(D).

Accordingly, we overrule Appellant's first and second issues. While we need not address Appellant's remaining issues in which she contests the trial court's findings under subsections (L)(ix), (N), (O), and (P), we will do so in part for the reasons set forth below. *See* TEX. R. APP. P. 47.1; *J.S.*, 687 S.W.3d at 551.

### Subsections (N), (O), and (P)

Appellant asserts in her fourth, fifth, and sixth issues that the evidence is insufficient to support the trial court's termination of her parental rights based on

subsections (N), (O), and (P). The State decided not to address these issues in its brief "[b]ecause the evidence overwhelmingly supports termination of [Appellant's] parental rights under (L), (D), and (E)." Given the clear and convincing evidence that Appellant endangered the children, we would ordinarily decline to discuss Appellant's remaining challenges to the trial court's predicate-ground findings. *See* Tex. R. App. P. 47.1; *J.S.*, 687 S.W.3d at 551. But under certain circumstances, we may modify the trial court's termination order so that it accurately reflects only those findings supported by the record. *See, e.g.*, *In re M.G.*, No. 02-23-00074-CV, 2023 WL 4008687, at *9–10 (Tex. App.—Fort Worth June 15, 2023, pet. denied) (mem. op.) (affirming and modifying termination order to delete unsupported finding of predicate ground (N)); *In re A.O.*, No. 02-21-00376-CV, 2022 WL 1257384, at *13 (Tex. App.—Fort Worth Apr. 28, 2022, pet. denied) (mem. op.) (modifying termination order to remove erroneous reference to the mother's indecency with a child even though "correcting this finding d[id] not alter the final outcome of th[e] case"); *In re J.A.*, No. 04-20-00242-CV, 2020 WL 5027663, at *4 (Tex. App.—San Antonio Aug. 26, 2020, no pet.) (mem. op.) (removing three predicate findings from the judgment because "[t]he record show[ed], and the parties agree[d], that the Department pled and argued that [the mother's] parental rights should be terminated under only grounds (N), (O), and (P), not under grounds (D), (E), or (K)"); *see also* Tex. R. App. P. 43.2(b).

The trial court orally rendered judgment terminating Appellant's parental rights pursuant to Section 161.001(b)(1)(D), (E), and (L)(ix). When "there is an inconsistency between the trial court's written judgment and its oral pronouncement, the written judgment controls" so long as the findings are supported by the record. *J.S.*, 687 S.W.3d at 555; *see In re E.C.R.*, 402 S.W.3d 239, 248–49 (Tex. 2013) (affirming termination based on unchallenged findings supported by the evidence); *see also In re J.J.L.*, 578 S.W.3d 601, 609 (Tex. App.—Houston [14th Dist.] 2019,

15

no pet.) (trial court's "[u]nchallenged findings bind us 'unless the contrary is established as a matter of law, or if there is no evidence to support the finding.'") (quoting *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986)). Although the Department alleged in its petition that Appellant committed the predicate acts in subsections (N), (O), and (P), it did not argue for termination based on those grounds. *Cf. In re A.D.A.*, No. 13-21-00229-CV, 2022 WL 89186, at *5 (Tex. App.—Corpus Christi-Edinburg Jan. 10, 2022, no pet.) (mem. op.) (determining, based on "the intent of the Department," that it "did not abandon ground (E) of its original petition when it only mentioned grounds (N) and (O) in its closing argument"). The trial court expressly limited its findings "to the grounds argued for termination"— subsections (D), (E), and (L)(ix). Because the additional termination-ground findings under subsections (N), (O), and (P) in the trial court's order are not supported by the record,[4] we may delete those findings to accurately reflect the evidence adduced at trial. *See, e.g.*, *In re T.K.W.*, No. 09-24-00160-CV, 2024 WL 3980652, at *1 (Tex. App.—Beaumont Aug. 29, 2024, pet. denied) (mem. op.) (affirming the trial court's written termination order as modified "to reflect the proper predicate violations" by deleting one ground not orally pronounced); *In re*

---

[4]The trial court also stated that its ruling was based on "the evidence that it[] heard not only at today's hearing but at all the other hearings." We reiterate that "[t]he only evidence that can support the trial court's order is [the] evidence admitted at trial." *In re X.M.B.E.*, 706 S.W.3d 714, 720 n.5 (Tex. App.—Eastland 2025, no pet.) (quoting *In re E.F.*, 591 S.W.3d 138, 142 n.4 (Tex. App.—San Antonio 2019, no pet.)). Texas courts have repeatedly expressed concerns regarding underdeveloped records in parental termination cases and often must explain that "none of the [matters presented at] previous hearings constitute evidence that can support the trial court's order terminating a parent's rights." *See E.F.*, 591 S.W.3d at 142 n.4 ("Given the constitutional rights of the parents in these proceedings, the future placement of the children involved, and the effect such placement will have on their lives . . . we urge the trial court and the parties to more completely develop the evidence at trial, so the appellate record is commensurate with the finality of parental termination."); *see also In re Z.R.M.*, 665 S.W.3d 825, 829 n.6, 831 (Tex. App.—San Antonio 2023, pet. denied) (collecting cases and "reluctantly conclud[ing] . . . that the evidence is legally and factually sufficient to have permitted the trial court['s]" best interest finding despite the paltry record); *In re M.A.J.*, 612 S.W.3d 398, 417 n.24 (Tex. App.—Houston [1st Dist.] 2020, pet. denied); *In re M.R.*, No. 13-22-00304-CV, 2022 WL 17844215, at *5–6 (Tex. App.—Corpus Christi–Edinburg Dec. 22, 2022, no pet.) (mem. op.) (The best interest determination was not supported by sufficient evidence, which "spanned only approximately fifty-eight pages of the reporter's record, contained only one exhibit which was unrelated to [the appellant-mother], and included testimony from only two witnesses.").

*K.J.S.*, No. 04-21-00247-CV, 2021 WL 5813829, at *4 & n.ii (Tex. App.—San Antonio Dec. 8, 2021, no pet.) (mem. op.) (finding sufficient evidence of subsections (D) and (E) and modifying termination order to delete findings not supported by the evidence).

Accordingly, we sustain Appellant's fourth, fifth, and sixth issues, and modify the trial court's final order of termination to delete grounds (N), (O), and (P) with respect to the mother.

*Best Interest of the Children*

In her seventh issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of the children. "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). We reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the factfinder so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving the requisite due deference to the trial court, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72.

Evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). In other words, the absence of evidence regarding some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship

17

endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.). Consequently, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *J.S.*, 687 S.W.3d at 552 (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)). And evidence that is relevant to Section 161.001(b)(1) termination grounds may be probative of the child's best interest. *See E.C.R.*, 402 S.W.3d at 249–50 (citing *C.H.*, 89 S.W.3d at 28).

As set forth above, the Department intervened when the children were being medically treated for injuries sustained as a result of physical abuse—injuries that gave rise to Appellant's arrest, confinement, and placement on deferred adjudication following her guilty plea. Yet, despite the overwhelming evidence of Appellant's culpability, she minimized her involvement and concealed the cause of her children's injuries at trial. The trial court could have reasonably determined that Appellant failed to appreciate and address the danger posed to her children, and that returning them to her would expose them to emotional and physical danger in the future. *See Holley*, 544 S.W.2d at 371–72; *see also In re A.N.C.*, 679 S.W.3d 311, 328–29 (Tex. App.—San Antonio 2023, pet. denied) (best interest finding supported by evidence that the mother remained with the violent father, and that the parents were responsible for the child's sibling's head trauma); *In re A.H.*, No. 11-24-00075-CV, 2024 WL 3879987, at *7 (Tex. App.—Eastland Aug. 21, 2024, pet. denied) (mem. op.) ("[Mother's] past behavior, minimization of her conduct, drug use . . . and failure to properly address and treat her mental health issues[] permit the rational conclusion that relinquishing [the child] to her care would pose a substantial risk of harm to the child.").

In addition to exposing her children to danger, Appellant's intentional conduct and omissions prior to removal exemplified a lack of parental capabilities. *See Holley*, 544 S.W.2d at 371–72. Before Appellant's arrest and the children's

removal, Appellant was with A.M. in the hospital for approximately twenty-four hours. During that time, Appellant and Swart relied on hospital staff to supervise A.M., feed him, and soothe him when he cried. They demanded that the nurses take A.M. out of his room multiple times and complained about the sleeping habits of both children. A reasonable factfinder could deduce that Appellant was detached from her children and disinterested in caring for them. Such "evidence of parental indifference weighs heavily in favor of a factfinder's finding that termination is in [the children's] best interest." *In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st Dist.] 2023, no pet.).

"Stability and permanence are paramount in the upbringing of children." *In re J.A.R.*, 696 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2024, pet. denied). Appellant contends that she established her ability to provide for the children's financial, physical, and emotional needs. The record shows that Appellant has maintained employment and was living in a child-appropriate home at the time of the final hearing. Yet Appellant was not on the apartment lease and tested positive for methamphetamine after being placed on deferred adjudication. Drug use undoubtedly "exposes the children to the possibility that the parent may be impaired or imprisoned." *J.S.*, 687 S.W.3d at 551. This is especially true in Appellant's case, as any illegal drug use in violation of her community supervision conditions exposes her to imprisonment for up to ten years. *See* PENAL § 12.34(a) (West 2019) (third-degree felony punishment range is imprisonment between two and ten years). Appellant's drug use while on deferred adjudication and her failure to demonstrate her ability to secure and maintain her own safe and stable housing weigh in favor of the trial court's best interest finding. *See A.N.C.*, 679 S.W.3d at 330 (mother risked eviction by allowing the father to live in her apartment in violation of her lease restrictions, which demonstrated a lack of stability); *see In re B.J.F.*, No. 01-23-00522-CV, 2024 WL 117174, at *18 (Tex. App.—Houston [1st Dist.] Jan. 11, 2024,

pet. denied) (mem. op.) (trial court permissibly determined that mother did not produce evidence of stable housing based on her failure to provide her lease). The trial court could have rationally inferred that relinquishing the children to Appellant's care would subject them to a life of uncertainty and instability, which is contrary to their best interest. *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

Moreover, the trial court was permitted to credit DeLuna's testimony that Appellant was not taking her medication. *See In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014). Appellant's recent improvement, "especially of short-duration, does not conclusively negate" a history of irresponsible choices. *See J.O.A.*, 283 S.W.3d at 346; *see also N.T.*, 474 S.W.3d at 479 ("[R]ecent improvement alone is not sufficient to avoid termination of parental rights."). Consequently, the trial court could consider Appellant's failure to address her mental health issues in its best interest analysis. *See In re E.G.*, 643 S.W.3d 236, 254 (Tex. App.—Amarillo 2022, no pet.) ("Mother's untreated mental health issues gave way to behavior that resulted in [the child's] removal and constituted conduct that endangered [the child's] physical and emotional well-being.").

Most importantly, given the child-centered focus of the best interest inquiry, we may not discount the children's improvement in the care of their foster parents, who hope to adopt them. *See J.W.*, 645 S.W.3d at 746–47. When children are too young to express their desires, the factfinder may consider whether the children have bonded with their caregivers, are well-cared for by them, and whether the children have spent minimal time with a parent. *In re E.J.M.*, 673 S.W.3d 310, 334 (Tex. App.—San Antonio 2023, no pet.); *see also In re N.J.H.*, 575 S.W.3d 822, 834 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (stating that evidence showing that a young child had bonded with foster family supported best interest finding). The children formed a bond with their foster parents, who have provided them with a

safe, stable home environment. They took the children to their numerous medical and therapy appointments that were vital to their recovery and continued improvement. *See In re M.C.L. V*, No. 04-21-00277-CV, 2022 WL 219002, at *6 (Tex. App.—San Antonio Jan. 26, 2022, no pet.) (mem. op.) (in child's best interest to be with a foster family that "has been attentive to meet [the child's] needs," including the child's "participat[ion] in early childhood intervention services"). Therefore, the plans for the children, especially considering their diminished bond with Appellant, support the trial court's best interest finding. *See Holley*, 544 S.W.2d at 371–72.

Upon considering the evidence as it relates to Appellant's actions and inactions, the emotional and physical danger to the children now and in the future, the emotional and physical needs of the children now and in the future, Appellant's lack of parental abilities, and her criminal conduct, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of the children. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72. Accordingly, we overrule Appellant's seventh issue.

### This Court's Ruling

We affirm the order of the trial court as modified.

JOHN M. BAILEY
CHIEF JUSTICE

April 30, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

21